IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA DEWITT, | ) | |
| | ) | CASE NO. 5:15CV255 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | KENNETH S. McHARGH |
| SECURITY ADMINISTRATION, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Donna Dewitt's ("Plaintiff" or "Dewitt") applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On October 3, 2011, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.  (Tr. 76).  The Plaintiff also protectively filed a Title XVI application for supplemental security income on October 3, 2011.  (Tr. 86).  In both applications, Plaintiff alleged disability beginning May 24, 2011.  (Tr. 76, 86).  These claims

were denied initially on January 30, 2012, and upon reconsideration on April 30, 2012.  (Tr. 108, 119-21, 122, 126).  Plaintiff timely filed a written request for a hearing on May 8, 2012.  (Tr. 149).

A hearing was held before Administrative Law Judge ("ALJ") Thomas A. Ciccolini on June 7, 2013.  (Tr. 34-56).  Plaintiff appeared and testified at the hearing, and was represented by counsel, attorney John S. Regas.  (*Id.*).  Lynn S. Smith, an impartial vocational expert, also appeared and testified at the hearing.  (Tr. 48-50).

On July 16, 2013, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled. (Tr. 17-29).  In his decision, the ALJ indicated Plaintiff was previously found "not disabled" with a residual functional capacity for a range of light work in an ALJ decision dated May 23, 2011, from which Plaintiff did not seek further review.  (Tr. 17).  Applying Acquiescence Ruling 98-4(6) and *Drummond* (as more fully discussed below), the ALJ determined he was required to adopt the prior findings from that decision regarding Plaintiff's residual functioning capacity, and other required findings.  (*Id.*).

The Appeals Council denied Plaintiff's request for review, making the ALJ's July 16, 2013, determination the final decision of the Commissioner. (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on April 20, 1961, and was 50-years-old on the alleged onset date, and 52-years-old at the time of the ALJ's decision.  (Tr. 76, 109).  Plaintiff was thus considered a person "closely approaching advanced age" for disability purposes. 20 C.F.R. § 416.963(d). Plaintiff completed high school.  (Tr. 37).  Her past relevant work is described as general laborer,

factory worker, packager, assembler, resident attendant, fast food worker, and nurse's aide.[1]  (Tr. 118, 209, 247).  Plaintiff was fired from her last job for an undisclosed criminal record, and she currently volunteers once a week at a food kitchen.  (Tr. 28, 53).

B.  <u>Medical Evidence</u>[2]

The medical evidence on the record relates to both Plaintiff's physical and mental impairments. However, Plaintiff does not challenge the ALJ's findings with respect to her physical impairments, but maintains error only as to the ALJ's analysis of Plaintiff's alleged mental impairments.  Accordingly, this summary focuses on medical evidence relating to Plaintiff's mental condition during the relevant period.

Plaintiff saw psychiatrist Pamela Zalewski at the Veterans Administration ("VA") on October 25, 2011.  After revealing that she suffered sexual abuse by her father as a child, Plaintiff declined Dr. Zalewski's suggestion that she seek counseling.  (Tr. 443-46).  Despite a history of alcohol and substance abuse, Plaintiff expressed that she had not consumed any alcohol in the past four months.  (Tr. 444).  Dr. Zalewski diagnosed Plaintiff with depressive disorder NOS, rule out substance-induced mood disorder, alcohol dependence, cannabis abuse, cocaine abuse, and rule out hypoactive sexual desire disorder.  (Tr. 444).  At this time Plaintiff was given a Global Assessment of Functioning ("GAF") score of 52, indicating moderate symptoms or impairment in social, occupational, or school functioning.  (Tr. 444).

---

[1] The jobs of packager, resident attendant, fast food worker, and assembler were designated by vocational expert, Lynn Smith, in a 15 Year Work Summary report prepared May 20, 2013, and include corresponding Occupational Titles numbers.  (Tr. 247).  Plaintiff's applications also included the positions of factory worker, general laborer, and nurse's aide.  (Tr. 118, 209).  Further, based on vocational expert testimony at the previous hearing, ALJ Hilton R. Miller found Plaintiff had the RFC to perform her past relevant work as a factory laborer.  (Tr. 70).
[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

On December 1, 2011, Plaintiff contacted the VA and requested inpatient treatment for substance abuse, and at that time she denied post-traumatic stress disorder ("PTSD") symptoms. (Tr. 416-18).  Admitted on December 9, 2011, Plaintiff again complained of depression and reported a history of sexual abuse to Dr. Marianne Jhee, a psychiatrist at a residential substance abuse treatment center. (Tr. 364, 399-406, 563-70).  Plaintiff informed Dr. Jhee that she had been sober for twelve years following treatment for alcohol abuse in 1998, but she started drinking again two years ago, and used cannabis and cocaine socially.  (Tr. 364, 399, 563).  Her mental status evaluation reported that Plaintiff exhibited a fairly euthymic mood, fair concentration, insight, and judgment, but cried when discussing her childhood sexual abuse.  (Tr.  364, 399, 403, 563).  At that time, Dr. Jhee gave the same diagnoses as Dr. Zalewski, omitting hypoactive sexual desire disorder, but adding rule out PTSD with a history of molestation.  (Tr. 405).  Dr. Jhee assigned Plaintiff a GAF of 50, indicating serious symptoms or impairments, and she was prescribed anti-depressant and anti-anxiety medication, although she did not require the anti-anxiety medication every day.  (Tr. 25-26, 402, 405-406).

On December 12, 2011, Dr. Youssef Mahfoud, a psychiatrist, evaluated Plaintiff and diagnosed her with depression NOS, alcohol, cocaine, cannabis, and nicotine dependence, rule out substance-induced mood disorder, rule out PTSD and a history of molestation.  (Tr. 364-72, 530-38).  Dr. Mahfoud also assigned Plaintiff a GAF of 50.  (Tr. 370-71).  Plaintiff again saw Dr. Mahfoud on December 16, 2011, and reported she had been to six Alcoholics Anonymous meetings, had been sober for two weeks, and was doing well.  (Tr. 514-19).  On mental status evaluation, Plaintiff exhibited occasional inappropriate smiling, but fair concentration, insight, and judgment, as well as a fairly euthymic affect.  Dr. Mahfoud continued the same diagnoses, but raised her GAF score to 52.  (Tr. 517-19).  Plaintiff saw Dr. Mahfoud on three more

4

occasions between December 28, 2011 and January 9, 2015, where her original diagnoses were

continued, and her GAF score was raised to 55.  (Tr. 632-33, 638-39).  Plaintiff was discharged

from the residential treatment program on January 10, 2012, with the following summary:

> Attended groups and went to AA meetings; urine screen negative
> throughout her stay; no behavioral problems were reported during her
> stay; went on passes on weekends and no problems were reported; w[as]
> seen weekly for medication management; mood and sleep improved and
> her affect became bright; did not report side effects from meds; metformin
> dose was decreased; was discharged home in stable condition.

(Tr. 26, 585-91, 619).

On January 24, 2012, Plaintiff again met with Dr. Zalewski, who observed normal mental

status on examination, but noted some pauses, "sing-song" answers, and limited insight and

judgment.  (Tr. 607-08).  At this time Dr. Zalewski diagnosed Plaintiff with depressive disorder,

rule out substance-induced mood disorder, alcohol dependence in early full remission, cannabis

and cocaine abuse in reported full remission, and rule out PTSD with childhood abuse.  (Tr.

608).  Plaintiff was again given a GAF score of 52.  (Id.).  At her next appointment on March 19,

2012, Plaintiff reported she was feeling well, but had low to moderate energy, some episodes of

anxiety with racing heart, about twenty to twenty-five times per week.  (Tr.  693).  Dr. Zalewski

continued the same diagnoses, and raised her GAF score to 53.  (Tr. 694).

At a counseling appointment on February 21, 2012, Plaintiff disclosed to Anita Kellon,

CNS, MSN, RN, that, in addition to her childhood sexual abuse, she was also raped by her

supervisor in the military.  (Tr. 593).  Ms. Kellon noted that Plaintiff did not seem aware of

problems, including her substance abuse, associated with her sexual assaults, but could not stop

crying when discussing the topic.  (Id.).  At this session Ms. Kellon determined Plaintiff needed

to further discuss the impact of her sexual assaults.  (Id.).  Plaintiff cancelled her next

appointment scheduled for March 7, 2012, but returned for counseling on March 19, 2012, where

Plaintiff talked about her sexual assaults, and was noted as being intermittently tearful with very low self-esteem.  (*Id.*).

Plaintiff continued counseling with Ms. Kellon through May 10, 2013, and noted during multiple sessions that Plaintiff showed little insight into the impact of her mental health problems and life experiences on her life.  (Tr. 662, 677, 686).  During her sessions on April 9 and June 22, 2012, Plaintiff inquired about going back to group therapy, and on July 30, 2012, Plaintiff began group therapy for past trauma and was diagnosed with PTSD.  (Tr. 668, 677, 686).  On October 1, 2012, Plaintiff discussed group therapy with Ms. Kellon, and informed her that she was considering filing a claim for her sexual assault in the military for Military Sexual Trauma ("MST") and Depressive Disorder.  (Tr. 756).  At this session Ms. Kellon reported a diagnosis of Depressive Disorder.  (*Id.*).

At her December 6, 2012 and January 31, 2013 sessions with Ms. Kellon, Plaintiff continued to exhibit little insight into how her mental health problems affected her life, and presented with a tense but cooperative interpersonal attitude and impaired judgment.  (Tr. 725, 732-33).  In December, notes indicated Plaintiff discussed her reluctance to talk about her sexual traumas and related negative feelings to her rape, and was diagnosed with chronic PTSD, depression, and MST.  (Tr. 732).  At her January session, Plaintiff reported she had been arrested for driving under the influence (her second offense in seven years).  (Tr. 725).  While cancelling an appointment on April 12, 2013, Plaintiff informed Ms. Kemp that she had served ten days in jail for her DUI, was getting married that day, and was doing well.  (Tr. 792).  At her May 10, 2013 session, Ms. Kellon reported Plaintiff as having an anxious mood, restricted range of affect, and a tense interpersonal attitude, but that she now showed moderate insight into her mental health problems and how they affect her decision-making.  (Tr. 803).

C.  <u>State Agency Consultants</u>

On initial review, the state agency consultant, Caroline Lewin, Ph.D., reviewed Plaintiff's psychiatric medical evidence from the VA dated through December 12, 2011.  Her findings of fact and analysis of evidence included consideration of her substance abuse issues and periods of sobriety, as well as ongoing depression.  (Tr. 79).  Her analysis also pointed out that Plaintiff was "dealing with being sexually molested as a child."  (*Id.*).  Dr. Lewin diagnosed Plaintiff with affective disorders and alcohol, substance addiction disorders, and determined Plaintiff had the following limitations under the "B" Criteria:  no restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  (Tr. 80).  She further opined that the evidence did not establish the presence of "C" criteria.  (*Id.*).  Regarding Plaintiff's mental residual functional capacity, Dr. Lewin adopted the ALJ's May 23, 2011 decision under *Drummond*.  (Tr. 84).

On reconsideration, state agency consultant, Katherine Fernandez, Psy.D., examined the medical evidence of record, through February 2012.  (Tr. 113).  Dr. Fernandez recognized Plaintiff's diagnoses of depressive disorder, substance abuse in remission, and rule out PTSD, along with a GAF score of 52.  (*Id.*).  Upon making the same determinations as to the "B" and "C" criteria as Dr. Lewin, Dr. Fernandez also adopted the ALJ's May 23, 2011 decision under *Drummond*.  (Tr. 117).

D.  <u>Previous ALJ Findings</u>

In his May 23, 2011 determination denying benefits, ALJ Hilton R. Miller found that, despite having severe impairments, Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 60-70).  ALJ Miller determined Plaintiff had the following severe impairments:

7

degenerative disc disease, diabetes, anemia, and depression, but did not meet or medically equal any of the Listings. (Tr. 62-63). He found Plaintiff was limited to light work, and could occasionally stoop and crouch; was limited to performing simple to moderately complex tasks in environments without time or production pressure, and social environments with limited and superficial social interaction. (Tr. 64). Further, supported by testimony from a vocational expert, ALJ Miller determined Plaintiff was capable of performing past relevant work as a Factory Laborer, and was thus not disabled. (Tr. 70).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since May 24, 2011, the alleged onset date.

3. The claimant has the following severe impairments: Degenerative disc disease; non-insulin dependent diabetes mellitus; post-traumatic stress and depressive disorders with a history of polysubstance abuse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant can only occasionally stoop and crouch; and she is limited to performing simple to moderately complex tasks in environments without time or production pressure and social environments with limited and superficial social interaction.

6. The claimant is capable of performing past relevant work as a Factory Laborer/Packager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2011, through the date of this decision.

8

(Tr. 19-29) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See*

*Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff maintains that the ALJ's determination that she is capable of performing a range of light work, and can return to past work, is not supported by substantial evidence.  Specifically, Plaintiff alleges error in the ALJ's evaluation of Plaintiff's mental impairments and step four findings, including his adoption of the prior ALJ's RFC findings.

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit confronted the question of whether the principles of res judicata applied against the Commissioner of Social Security on claims which have been previously determined.  *Id.* at 842. The court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Id.*  Following the *Drummond* decision, the Social Security Administration ("SSA") issued Acquiescence Ruling 98-4(6), which explained how the SSA would apply *Drummond* within the Sixth Circuit, providing the following:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).  Additionally, the Commissioner's internal guide sets out issues and factual findings precluded by res judicata under *Drummond*.  *Erb v. Comm'r of Soc. Sec.*, No. 13-CV-14798, 2015 WL 730130, at *20 (E.D. Mich. Feb. 19, 2015)

(*citing Hearings, Appeals, and Litigation Law Manual* ("HALLEX"), § I-5-4-62, 1999 WL 33615029, at *8-9 (Dec. 30, 1999)).  These include the RFC as well as other findings along the sequential evaluation process, such as whether a claimant meets or equals a listing.  *Id.*  The plaintiff carries the burden to show circumstances have changed since the prior ALJ's decision "by presenting new and material evidence of deterioration."  *Drogowski v. Comm'r of Soc. Sec.*, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011), *report and recommendation adopted*, 2011 WL 4502955 (E.D. Mich. Sept. 28, 2011).

At the outset of his opinion, the ALJ acknowledged the res judicata principle and found that he was bound by the May 23, 2011, decision because there was no significant new evidence or changed circumstances that would warrant a departure.  (Tr. 17).  The ALJ found:

> Except with regard to the finding of severe impairments, as more fully discussed below, I have adopted the prior findings of the prior ALJ Decision because but for said findings, there is no new and material evidence of record necessitating materially different conclusions.

(*Id.*).  The ALJ accordingly adopted the findings of the previous ALJ, including those findings relating to  Plaintiff's RFC and past work, currently at issue on appeal.

A.  Mental RFC Analysis

Plaintiff now contends that the ALJ's adoption of the prior ALJ's mental RFC was improper because there was new and material evidence providing a basis for a different finding. Specifically, Plaintiff argues the RFC and the state agency consultant opinions relied on by the ALJ did not adequately account for Plaintiff's later-emerging PTSD diagnosis or treatment.

To overcome res judicata, Plaintiff points to VA therapy notes beginning on February 21, 2012, indicating Plaintiff disclosed for the first time to her therapist, Ms. Kellon, that, in addition to her childhood sexual trauma, she had also been raped as an adult.  Plaintiff argues that her PTSD was not actually diagnosed until after this admission, so the diagnosis, along with

11

subsequent treatment notes relating to her PTSD, were not considered by the state agency consultants when they formulated their opinions.  Plaintiff argues that, because the ALJ gave significant weight to these opinions when adopting the prior ALJ's RFC, his findings were in error and not supported by substantial evidence.

After a review of the record and the ALJ's decision, the Court finds that the ALJ sufficiently accounted for any new evidence.  At step two the ALJ added the severe impairments of PTSD and polysubstance abuse disorders, which he considered in his RFC analysis.  (Tr. 20, 27-28).  Although the state agency consultants did not consider the treatment notes following Plaintiff's PTSD diagnosis, the treatment notes they did review provided details from her therapists relating to past sexual trauma, and the impact of her mental health problems on her day to day life.  (Tr. 79-80, 113-15).  Although Plaintiff alleges the consultants did not have the benefit of reviewing treatment notes after the PTSD diagnosis that exhibited worsening symptoms, she fails to point to any evidence that actually showed behaviors materially and substantially different from those noted in previous sessions.  Additionally, Plaintiff does not dispute that the mental health counseling notes dated February 21, 2012, were on the record at the time of Dr. Fernandez's reconsideration analysis.  Although it did not specifically mention PTSD, it informed the analysis of Dr. Fernandez as to the sexual assaults that led to this diagnosis soon after, and provided insight as to symptoms and behaviors exhibited by Plaintiff up to that time.

Further, despite giving them significant weight, the ALJ did not base his decision to adopt the previously-determined RFC solely on the opinions of the state agency consultants. In addition to those opinions, the ALJ clearly considered the treatment notes Plaintiff points to following her PTSD diagnosis, and incorporated them into his RFC analysis.  (Tr. 26-28).

Specifically, the ALJ acknowledged therapy notes through April 2013, noting that she had not been seen by mental health professionals since that time, and had cancelled her last two appointments.  (Tr. 26-27).  Based on a review of all the record evidence, the ALJ further determined the evidence showed Plaintiff exhibited improvement of symptoms and functioning in the absence of substance abuse, noting Plaintiff's sobriety since her December 2011 treatment (save for one brief relapse).  (Tr. 28).  The ALJ considered the state agency consultants' opinions that Plaintiff did not have worsening affective symptomology, along with other evidence of record, and found them consistent with the mild to moderate RFC limitations imposed by the previously-determined RFC.  (*Id.*).  Plaintiff fails to point to any new and material evidence on the record that was not considered and that would necessitate different conclusions.

Accordingly, The ALJ reasonably concluded that additional evidence did not demonstrate a change in the severity of Plaintiff's mental impairment in relation to her RFC.  Plaintiff has failed to demonstrate that the ALJ's application of *Drummond* and AR 98-4(6) was improper. The ALJ fully considered the evidence, including new evidence in the record, and concluded that Plaintiff's mental impairment had not worsened such that it warranted a deviation from the prior RFC determination.

### B.  Past Work and VE Testimony

Plaintiff argues the ALJ's determination that Plaintiff could return to her past work as a "Factory Laborer/Packager" is not supported by substantial evidence.  His decision clearly stated that the ALJ adopted the findings of the pervious ALJ, who determined Plaintiff was "capable of performing past relevant work as a factory laborer."  (Tr. 17, 70).  Prior to his decision, the ALJ utilized a vocational expert whose testimony and 15 Year Work Summary report stated Plaintiff had past work as a "Packager," "Resident Attendant," "Fast Food Worker," and "Assembler."  In

13

finding Plaintiff capable of performing past relevant work as a "Factory Laborer/Packager," the ALJ cited to the report of the vocational expert. (Tr. 28).

Plaintiff bases her argument on the ALJ's characterization of the past relevant work as "Factory Laborer/Packager," claiming it inconsistent with both the prior ALJ's determination and the report and testimony of the vocational expert. According to Plaintiff, the ALJ was required to either reject the new vocational expert testimony and adopt the prior ALJ's conclusion that Plaintiff could work as a "Factory Laborer," or reconcile the discrepancy in the vocational expert's testimony at the hearing. (Pl. Brief pp. 11-12). Instead, Plaintiff argues, the ALJ improperly adopted the vocational expert's testimony and combined it with the findings of the previous ALJ, undermining his *Drummond* adoption. (Pl. Brief pp. 12-13).

The government argues the ALJ's use of differing titles to describe an occupation does not create material inconsistency so as to undermine the *Drummond* adoption of Plaintiff's past relevant work capability. In support, the government cites to *Lindsley v. Commissioner of Social Security*, which ruled that the use of different terminology by a VE and the DOT to describe employment positions does not, in and of itself, establish a conflict between the VE testimony and the DOT. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009). Plaintiff attempts to distinguish the case by pointing out *Lindsley* speaks to differences between the VE testimony and the DOT definitions, while the present case involves differing occupational titles between those used by an ALJ and a VE.

Noting the distinction, this Court nonetheless finds *Lindsley* to be instructive. Relating to VE testimony indicating a job that was not listed specifically in the DOT, the *Lindsley* court explained:

> The fact that [a job description]… does not align perfectly with the DOT's listed occupation titles should not be surprising given that "the DOT

14

> contains information about most, but not all, occupations.  S.S.R. 00-4p, 2000 WL 1898704, at *2 (emphasis added).  Moreover,…the DOT's job classifications are collective descriptions of "occupations" that can encompass numerous jobs.  Id.  ("The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous jobs.") see also S.S.R. 96-9p, 1996 WL 374185, at *10 n. 4 (S.S.A. July 2, 1996) ("An 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties.  Within occupations…there may be variations among jobs performed for different employers...."

*Id.* at 605.  The record contains reference to Plaintiff's past work in "general labor" and that she previously worked in fast food, as a nurse's aide, and had some factory work.  (Tr. 118, 209).  The VE referred to DOT #559.687-074, titled "Inspector and Hand Packager" in her report that Plaintiff had past relevant work as a "Packager."  (Tr. 247).  This job is categorized under Chapter 5 "Processing Occupations" under the DOT.  DOT # 559.687-074.  This evidence is consistent with the ALJ's previous finding that Plaintiff had past relevant work as a "Factory Laborer," a title that does not specifically appear in the DOT. *See generally Colwell v. Chater*, 98 F.3d 1341, 1996 WL 557773, at *4 (6th Cir. 1996) (Table) (referring to vocational expert testimony that the plaintiff could perform "certain *factory jobs such as* bench assembly…visual inspection, sorting, *packaging*, and simple machine operation.") (emphasis added).

This Court rejects Plaintiff's argument that the ALJ's use of the vocational expert undermined the proper application of *Drummond* with respect to past relevant work.  The VE, through her report and hearing testimony, merely clarified the designation of Plaintiff's past work, and provided specific titles from the DOT that coincided with the jobs previously asserted as her past employment.  (Tr. 48-49, 247).  Her testimony did not provide any new opinion or insight as to Plaintiff's abilities relating to either her past work or new job possibilities.  (*Id.*).  Further, Plaintiff does not convincingly point to, nor does the Court find, any material confusion as to the jobs considered as Plaintiff's past relevant work.

15

The ALJ clearly articulated his application of *Drummond*  and adoption of the previous finding that Plaintiff is capable of performing her past relevant factory work.  (Tr. 17, 28-29).  In so doing, the ALJ incorporated a related, clarifying job title ("Packager") along with the occupation title originally used by the previous ALJ ("Factory Laborer").  (Tr. 28-29, 70).  Utilization of both terms to more clearly identify Plaintiff's established past work does not materially alter or confuse the previous findings.  In accordance with the foregoing discussion, this Court finds the ALJ properly adopted the findings of the previous ALJ under *Drummond*, and the ALJ's determination at this step is thus supported by substantial evidence.

### VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  December 28, 2015.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).